NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240854-U

NO. 4-24-0854

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* T.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 20JA302 |
| v. | ) | |
| Tannah M., | ) | Honorable |
| Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

---

JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed
        the circuit court's judgment, finding no issue of arguable merit could be raised on
        appeal.

¶ 2     In March 2023, the State filed a petition to terminate the parental rights of

respondent mother, Tannah M. (Mother), to her minor child, T.M. (born in April 2016).

Following hearings on the State's petition, the circuit court found Mother to be an unfit parent

under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) and determined it was

in the minor's best interest to terminate Mother's parental rights.

¶ 3     In August 2024, appellate counsel filed a motion to withdraw as counsel and an

accompanying memorandum pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing no

meritorious issues could be raised on appeal. For the following reasons, we grant the motion to withdraw and affirm the circuit court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5          On August 27, 2020, the State filed a petition alleging T.M. was a neglected minor and her environment was injurious to her welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)) because Mother and Mother's paramour had "a substance abuse issue," and T.M.'s siblings "were left outside for an extended period of time with no adult supervision." The State filed an amended petition on December 21, 2020, which contained the original petition's allegations and further alleged T.M. was not receiving necessary medical care because "her lead level was 8.0 and [she was] diagnosed with mild anemia" and Mother had "a history of no shows for well-child visits." The amended petition also alleged T.M. was not receiving adequate food, clothing, and shelter, was "diagnosed with Failure to Thrive," and required hospitalization twice in July 2016. Mother stipulated the State would have enough evidence to prove T.M.'s siblings were left outside without supervision. The circuit court adjudged T.M. neglected, found Mother unfit, unable, or unwilling to care for T.M., and placed T.M. with her father, Jamison M. (Father).

¶ 6          On February 7, 2022, the State filed a motion seeking to vacate the circuit court's placement order and for T.M.'s guardianship and custody to be transferred to the Illinois Department of Children and Family Services (DCFS). In it, the State alleged officers were called to Father's home to investigate a possible gunshot on January 10, 2022. Officers discovered Father "became angry with one of the minors, and retrieved a firearm," which went off "[a]t some point." Father was on mandatory supervised release and was not permitted to possess a firearm. The motion also alleged assigned caseworkers were having trouble connecting with

Father and performing home visits. Responding officers learned Father was "transient" and did not have an "official residence." The court granted the motion on that same day.

¶ 7            On March 22, 2023, the State moved to terminate Mother's parental rights, alleging (1) she failed to make reasonable efforts to correct the conditions causing T.M.'s removal from June 4, 2021, to March 4, 2022; March 4, 2022, to December 4, 2022; and June 7, 2022, to March 7, 2023; (2) she failed to make reasonable progress toward T.M.'s return to her during those time periods; and (3) she failed to maintain a reasonable degree of interest, concern, or responsibility as to T.M.'s welfare. See 750 ILCS 50/1(D)(b), (m)(i), (m)(ii) (West 2022).

¶ 8            Mother did not attend the fitness hearing on the motion to terminate. April Moore, the DCFS case manager assigned to T.M.'s case, testified Mother did not complete her integrated assessment. DCFS prepared a service plan for Mother, which recommended she engage in several services, including mental health counseling, domestic violence counseling, substance abuse treatment, and parenting classes. Moore and other DCFS employees made regular and consistent efforts to contact Mother via phone calls, text messages, e-mails, and mail. However, Mother rarely responded. Moore testified Mother knew the services she needed to engage in, and she informed Mother of the importance of engaging in those services.

¶ 9            Mother was diagnosed with bipolar I disorder and chronic post-traumatic stress disorder, but she did not successfully complete her mental health treatment requirements. She did not engage in the required domestic violence services. Due to her history of substance abuse, Mother was required to comply with random drug drops approximately twice per month. Moore estimated Mother complied with half of those drug drops, and Mother tested positive for tetrahydrocannabinol (THC) and alcohol "on several different occasions." Mother did not engage in the required substance abuse services. According to Moore's testimony, the only required

service Mother successfully completed was her parenting classes. Despite Mother's successful completion of parenting classes, DCFS "still had concerns about her parenting."

¶ 10 Mother was entitled to visit T.M. weekly, but she frequently missed visits. Her last visit with T.M. was in October 2021. Mother was never permitted to have unsupervised visits with T.M. "[b]ecause she did not comply with her visitation plan, and she was inconsistent with her visits." Moore had concerns about Mother's ability to parent because Mother "has consistently not maintained contact with [DCFS]. She has been combative. She has refused to engage in services. And she has not taken accountability as to why her children have come into care."

¶ 11 The circuit court found Mother to be an unfit parent, holding the State proved by clear and convincing evidence Mother failed to make reasonable efforts to correct the conditions causing T.M.'s removal during the relevant dates, make reasonable progress toward T.M.'s return during that same period, and maintain a reasonable degree of interest, concern, or responsibility regarding T.M.'s welfare.

¶ 12 The matter proceeded to a best-interest hearing, which Mother attended via phone. The State requested the circuit court take judicial notice of a DCFS permanency report filed April 30, 2024. According to the report, T.M. had been with her foster family since October 6, 2023, though T.M. had a relationship with the family prior to placement. T.M. was "doing well" there, "like[d] living there," and was "very bonded with the family." T.M. "appear[ed] very comfortable in the home and bonded with household members." T.M. was doing well in school and participated in numerous after-school activities. T.M.'s caregiver provided for her basic needs, including food, shelter, and clothing. Her caregiver ensured T.M. was up to date with her medical exams and immunizations and was willing to adopt her. The report noted

Mother neither maintained consistent contact with DCFS nor engaged in the recommended services and she had no contact with T.M. since December 22, 2022.

¶ 13		Mary Cacciapaglia, the guardian *ad litem*, proffered she met with and observed T.M. in her current placement. During a one-on-one conversation, T.M. said she felt comfortable there and "she enjoy[ed] the fact that she gets to see her two siblings frequently because they live in close proximity to her current foster home." T.M. had her own room and "seemed to be adjusting well to what at that point was a relatively new placement."

¶ 14		The circuit court found the State proved by a preponderance of the evidence the best-interest factors favored terminating Mother's parental rights. In doing so, the court highlighted T.M. was "very integrated" into her foster family, " 'demonstrates a sense of security' " in her foster home, and " 'turns to the current caregiver for comfort, support, love and to have her basic needs met.' "

¶ 15		This appeal followed.

¶ 16		                              II. ANALYSIS

¶ 17		                              A. *Anders* Motions

¶ 18		The *Anders* procedure pertaining to an appellate counsel's motion to withdraw applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685, 732 N.E.2d 140, 143 (2000). Under *Anders*, a brief must accompany counsel's motion to withdraw, outlining any issues in the record which might arguably support the appeal, explaining why counsel finds those issues frivolous, and concluding that the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685. The appellate court will then review the record to determine whether the available arguments are wholly without merit. *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 10, 51 N.E.3d 1109.

¶ 19    On appeal, Mother's appointed counsel examined whether the circuit court's unfitness findings and best-interest determination were against the manifest weight of the evidence and concluded any such claims would be frivolous. We agree.

¶ 20                              B. Unfitness Finding

¶ 21    "The State must prove parental unfitness by clear and convincing evidence." (Internal quotation marks omitted.) *In re A.L.*, 409 Ill. App. 3d 492, 500, 949 N.E.2d 1123, 1129 (2011). A determination of parental unfitness involves factual findings and credibility determinations, which the circuit court is in the best position to make because its "opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21, 77 N.E.3d 69. "A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48, 187 N.E.3d 763. "A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." (Internal quotation marks omitted.) *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30, 125 N.E.3d 444.

¶ 22    The Adoption Act provides several grounds on which a circuit court may find a parent unfit. "[S]ufficient evidence of one statutory ground *** [is] enough to support a [court's] finding that someone [is] an unfit person." (Internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 83, 19 N.E.3d 227. After reviewing the record, we agree there is no issue of arguable merit concerning the court's unfitness finding.

¶ 23    The State alleged, and the circuit court found, Mother was unfit because she, among other things, failed to make (1) reasonable efforts to correct the conditions causing T.M.'s removal from her custody and (2) reasonable progress towards T.M.'s return home within the

following nine-month periods: June 4, 2021, to March 4, 2022; March 4, 2022, to December 4, 2022; and June 7, 2022, to March 7, 2023. During those time periods, the record shows Mother failed to complete all but one of her service plan's recommendations, including mental health counseling, domestic violence counseling, and substance abuse treatment. Mother infrequently complied with her randomized drug drops, and when she did comply, she tested positive for alcohol and THC several times. While Mother completed her parenting classes, DCFS remained concerned about her parenting abilities. Mother also failed to maintain regular communication with Moore and DCFS, despite Moore's efforts to reach her via phone calls, text messages, e-mails, and mail. Further, Mother frequently missed visits with T.M., and her lack of compliance with her visitation plan prevented her from being allowed to have unsupervised visits with T.M. Based on the evidence presented at the fitness hearing, the court's unfitness finding was not against the manifest weight of the evidence, as the opposite conclusion is not clearly evident. See *N.B.*, 2019 IL App (2d) 180797, ¶ 30. Any argument to the contrary would be meritless.

¶ 24                                C. Best-Interest Finding

¶ 25            After a parent is found unfit, "the focus shifts to the child." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). "The issue is no longer whether parental rights *can* be terminated," but rather, "whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. The circuit court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). See *In re T.A.*, 359 Ill. App. 3d 953, 959-60, 835 N.E.2d 908, 912-13 (2005). Those factors include: the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background and ties; the child's sense of attachments, including where the child feels loved, attached, and valued; the child's sense of security,

- 7 -

familiarity, and continuity of affection; the child's wishes and long-term goals; the child's community ties; the child's need for permanence; and the uniqueness of every family and each child. 705 ILCS 405/1-3(4.05) (West 2022). We will not overturn a court's best-interest finding unless it is against the manifest weight of the evidence. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009).

¶ 26 Appellate counsel contends no meritorious issue can be raised on appeal to challenge the circuit court's best-interest finding. The evidence shows the best-interest factors, including T.M.'s physical safety and welfare, sense of attachment and security, and need for permanence support the termination of Mother's parental rights. T.M.'s caregiver, with whom she had a relationship prior to her foster placement, provided for her physical, emotional, and social needs and was willing to adopt her. T.M. was "very bonded" with her foster family and "very comfortable in the home." As the circuit court observed, T.M. was "very integrated" into family, felt " 'a sense of security' " in her foster home, and " 'turn[ed] to the current caregiver for comfort, support, love and to have her basic needs met.' " Conversely, Mother failed to visit T.M. with regularity, which prevented her from earning unsupervised visitation privileges. Her last visit with T.M. was in October 2021.

¶ 27 The circuit court's best-interest decision was not against the manifest weight of the evidence, as the opposite conclusion was not clearly evident. See *T.A.*, 359 Ill. App. 3d at 960. Based on this record, there are no meritorious arguments that could be raised on appeal to reasonably claim the court abused its discretion in finding Mother unfit and it was in the child's best interest to terminate Mother's parental rights.

¶ 28 III. CONCLUSION

¶ 29     For the foregoing reasons, we grant appellate counsel's motion to withdraw as counsel because no meritorious argument can be raised on appeal, and we affirm the circuit court's judgment.

¶ 30     Affirmed.